1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MATTHEW PEYTON,

　　　　　　Plaintiff,

　　v.

LAURIE SMITH, et al.,

　　　　　　Defendants.

Case No.　5:19-cv-05871-EJD

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS**

Re: Dkt. No. 17

　　　　Plaintiff Matthew Peyton brings this action against Defendants Laurie Smith, Daniel
Rodriguez, Thea Lera, Jose Cardoza, Julian Quinonez, and Does 1-10 asserting one claim for
violation of his First Amendment rights under 42 U.S.C. § 1983.  Compl., Dkt. No. 1.  Defendants
now move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).  The Court finds
the motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b).
Having considered the parties' written submissions, the Court GRANTS IN PART and DENIES
IN PART the motion to dismiss with leave to amend.

I.　　BACKGROUND

　　A.　　Factual Background

　　　　At the time of the filing of the complaint, Peyton was a Detective for the Santa Clara
County Sheriff's Office.  Compl. ¶¶ 1, 5.  Defendants Sheriff Laurie Smith, Captain Daniel
Rodriguez, Lieutenant Thea Lera, Lieutenant Jose Cardoza, and Lieutenant Julian Quinonez are
also employees of the Sheriff's Office.  *Id.* ¶¶ 6-10.  Peyton brings this suit against Defendants in
their individual capacities.  *Id.*

United States District Court
Northern District of California

Peyton joined the Sheriff's Office in 2008. *Id.* ¶ 11. In his time there, he served as Court Training Officer, Field Training Officer, Firearms Instructor, and Academy Instructor, and he also became a Certified Child Abuse Investigator, Certified Sexual Assault Investigator, Child Forensic Interviewer, and Certified Field Evidence Technician. *Id.* ¶ 12. Throughout his employment, Peyton received numerous letters of appreciation and commendations for his work. *Id.* ¶ 15. In 2016, Peyton became a Detective and was assigned to the Sexual Assault Investigations Unit—a coveted assignment for which he underwent specialized training. *Id.* ¶ 13. Peyton expressed a desire for promotion up the ranks in the Sheriff's Office. *Id.* ¶ 16. In furtherance of that goal and to boost Peyton's profile, in May 2017, Rodriguez offered Peyton the task of drafting a policy related to protection of children whose parents are arrested. *Id.* Peyton presented his draft policy at a meeting attended by multiple Chiefs of Police and other law enforcement officers from Santa Clara County. *Id.* ¶¶ 17-18. Peyton was directed to turn his draft policy into a General Order, which he then presented to Sheriff's Office Administration, Press Information Officers, the Child Abuse Council, and selected patrol personnel. *Id.* ¶ 18. Rodriguez expressed pleasure with Peyton's work on the draft policy and offered Peyton extra days off, which Peyton declined. *Id.* ¶ 19.

In June 2017, Peyton was passed up for promotion and asked Rodriguez to discuss the decision. *Id.* ¶ 20. After outlining Peyton's qualifications, Rodriguez stated something to the effect of: "I don't think they even look at that. They care more about what you've done for them, or what you can do for them." *Id.* ¶ 21. Peyton understood Rodriguez to be referring to Smith and her administration. *Id.*

In September 2017, Peyton became responsible for most of the sexual assault cases in the Sheriff's Office. *Id.* ¶ 22. As of that time, Peyton had never been disciplined or even accused of deficient performance by his superiors. *Id.* ¶ 23. His previous Performance Appraisal Report from April 2017 indicated that he was "exceeding expectations," and the Sergeant reviewing his work noted that "Deputy Peyton has the potential to become an invaluable member for the Sexual Assault Investigations Unit." *Id.* ¶ 24.

Case No.: 5:19-cv-05871-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
2

United States District Court
Northern District of California

1    On or around September 21, 2017, a picture of Peyton and his wife at a fundraiser for

2   Smith's political opponent, John Hirokawa, was posted on Facebook. *Id.* ¶¶ 25, 27. Within 48

3   hours, Defendants became aware of the photo. *Id.* ¶ 28. Five days later, on September 26, Peyton

4   was called into a meeting with Rodriguez, Cardoza, and non-defendant Sergeant Shadra Shaheen.

5   *Id.* ¶ 30. Rodriguez informed Peyton that his "commitment to the division" was in question and

6   issued Peyton a "verbal counseling" for (1) failing to turn in a "blue slip" after requesting to leave

7   work early days prior, and (2) emailing another detective about information related to a reopened

8   case, days before Peyton's request to leave early. *Id.* ¶ 31. Rodriguez did not provide any

9   instances of substantive work deficiency when asked. *Id.* ¶ 32.

10   A series of negative incidents followed in October 2017. First, Peyton met privately with

11   Cardoza, seeking clarification on the grounds for which he had received verbal counseling. *Id.* ¶

12   33. Cardoza stated that he disagreed with the grounds for verbal counseling and blamed

13   Rodriguez's "management style." *Id.* ¶ 34.

14   Second, Peyton emailed and called Lera with a request to attend the Academy Instructor

15   Certificate Course. *Id.* ¶ 35. Lera did not respond to either Peyton's email or phone call.

16   Third, after his unanswered requests to Lera, Peyton received his first ever negative

17   "comment card" in connection with an unavoidable on-duty car collision that occurred earlier in

18   October 2017. *Id.* ¶ 36. Rodriguez instructed Sergeant Shaheen to add additional negative

19   language to the card. *Id.* ¶ 38. Peyton received this negative comment card despite having been in

20   a prior vehicle collision in 2012, which resulted in much worse vehicle damage but no write-up of

21   any kind. *Id.* ¶ 39.

22   Fourth, after Peyton received the negative comment card, a co-worker informed Peyton

23   that the co-worker had been told not to associate with Peyton because he had been "blacklisted by

24   the administration." *Id.* ¶ 40. Peyton was also notified by another detective of a rumor circulating

25   that Peyton's family was hosting Hirokawa's campaign operation. *Id.* ¶ 41.

26   Fifth, at the end of October 2017, Rodriguez and Cardoza denied Peyton's request for

27   "comp time" to work on sexual assault cases on the weekend. *Id.* ¶ 42. Rodriguez denied this

28   Case No.: 5:19-cv-05871-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS

3

request despite previously indicating that Sexual Assault Investigations Unit members would receive as much comp time as necessary to complete investigation tasks, so long as it was not overtime work. *Id.* ¶ 43. This denial of comp time prevented Peyton from completing case investigation tasks. *Id.* ¶ 44.

Further negative incidents occurred in November 2017. First, Cardoza removed Peyton from the Crime Scene Investigation team, stating that it was a "management decision" and that Peyton needed to focus on "high liability cases." *Id.* ¶ 45. Second, Peyton's requests for "comp time" were again denied. *Id.* ¶ 46. Third, a second email to Lera regarding Peyton's request to attend Academy Instructor Certificate Course again went unanswered. *Id.* ¶ 47. Fourth, Cardoza denied Peyton's request for a "day trade," even though such requests were commonplace. *Id.* ¶ 48. Fifth, Peyton was not permitted to participate in a very important investigation of an escaped inmate. *Id.* ¶¶ 49-51. Every other detective except for Peyton received a role or assignment in the escape investigation. *Id.*

In November or December 2017, Quinonez replaced Cardoza as Peyton's supervising Lieutenant. *Id.* ¶ 52. During this period, Quinonez and Rodriguez assailed Peyton's work product and work ethic on a weekly basis. *Id.* ¶ 53. Cardoza and Shaheen both informed Peyton that Cardoza and Shaheen did not have any problems with his work. *Id.* ¶ 54. Shaheen told Peyton to "stay under the radar." *Id.*

On January 9, 2018, Quinonez terminated Peyton's assignment to the Sexual Assault Investigations Unit and transferred him to West Valley Property Crimes, which Peyton asserts constituted a downgrade in prestige and responsibility. *Id.* ¶¶ 55-56. Rodriguez had previously stated on multiple occasions that "nobody cares about property crimes." *Id.* ¶ 57. The transfer also added a significant amount of time to Peyton's commute. *Id.*

In February 2018, Peyton was accused of surreptitiously recording a conversation with Quinonez. *Id.* ¶ 58. The allegations were investigated and submitted to the District Attorney for prosecution, but the District Attorney ultimately chose not to file any charges. *Id.* ¶ 59. As a result, Peyton was referred to the Discipline Review Board. *Id.* ¶ 60. In the final months of 2018,

the Discipline Review Board convened to discuss Peyton's case and determine the discipline they would recommend to Smith. *Id.* ¶ 61. The Discipline Review Board submitted its findings and recommended a three-week suspension to Smith. *Id.* ¶ 63. Smith demanded that the Discipline Review Board reconvene and make a new recommendation of termination instead. *Id.* ¶ 64. Over the objection of several members of the Discipline Review Board, the Discipline Review Board ultimately submitted a new recommendation of termination. *Id.* ¶ 65.

### B. Procedural Background

Peyton filed this action on November 20, 2019. Dkt. No. 1. Defendants filed the motion now before the Court on December 20, 2019. Dkt. No. 17. On April 3, 2020, the Court granted Defendants' motion to stay the action pending resolution of arbitration proceedings that Peyton initiated. Dkt. No. 29. On March 19, 2021, Peyton notified the Court that the parties had completed arbitration. Dkt. No. 30. At the June 6, 2021 case management conference, the Court lifted the stay. Dkt. No. 34.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant a motion to dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

Case No.: 5:19-cv-05871-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS

United States District Court
Northern District of California

1   plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

2          A court generally may not consider any material beyond the pleadings when ruling on a

3   Rule 12(b)(6) motion.  If matters outside the pleadings are considered, "the motion must be treated

4   as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  However, documents

5   appended to the complaint, incorporated by reference in the complaint, or which properly are the

6   subject of judicial notice may be considered along with the complaint when deciding a Rule

7   12(b)(6) motion.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal*

8   *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

9   Likewise, a court may consider matters that are "capable of accurate and ready determination by

10  resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank,*

11  *N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R.

12  Evid. 201(b)).

### III.    DISCUSSION

####        A.    Request for Judicial Notice

15         Defendants seek judicial notice of two documents: (1) a June 13, 2018 memo authored by

16  Deputy District Attorney John Chase, and (2) Santa Clara County Ordinance Code § A20-2.  Mot.

17  at 3; Req. for Judicial Not. in Supp. of Defs.' Mot. to Dismiss, Dkt. No. 18.  Peyton does not

18  appear to object to either request.  *See* Opp'n to Defs.' Mot. to Dismiss Plf.'s Compl. ("Opp'n"),

19  Dkt. No. 19.

20         As to the Chase memo, Defendants assert that the complaint references the memo.  Mot. at

21  3.  However, upon examination of the complaint, the Court finds no such reference.  Defendants

22  cite only to Paragraph 59, which states: "The allegations [concerning Plaintiff's surreptitious

23  recording of a conversation with Quinonez] were investigated and submitted to the Office of the

24  District Attorney, for criminal prosecution, but the District Attorney did not file any charges

25  against Plaintiff Peyton." *Id.* (citing Compl. ¶ 59).  This allegation is not a reference to the memo

26  itself; rather, it merely discusses the same topic as the memo.  The memo is therefore not

27  incorporated into the complaint and not judicially noticeable on that basis.  Furthermore,

United States District Court
Northern District of California

1    Defendants apparently seek judicial notice of the memo in order to refute Peyton's "false inference

2    that he was absolved," *id.*, but that is not proper, as the Court may not take notice of disputed facts

3    in judicially noticeable documents. *Khoja*, 899 F.3d at 999. At any rate, the Court must accept all

4    factual allegations as true on a Rule 12(b)(6) motion, and the memo does not contradict the

5    allegations of Paragraph 59. The Court need not take judicial notice of documents simply because

6    Defendants disagree with Peyton's characterization of certain events and wish to characterize them

7    in a different way.

8          As to the ordinance, "[m]unicipal ordinances are proper subjects for judicial notice."

9    *Tollis, Inc. v. Cnty. of San Diego*, 505 F.3d 935, 938 (9th Cir. 2007). Accordingly, the Court takes

10   judicial notice of Ordinance Code § A20-2.

11         **B.    Rule 12(b)(6)**

12         "It is well settled that the state may not abuse its position as employer to stifle 'the First

13   Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of

14   public interest.'" *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (quoting *Pickering v. Bd. of

15   Educ.*, 391 U.S. 563, 568 (1968)). Courts employ a "sequential five-step series of questions"

16   when examining a public employee's First Amendment claim:

17              (1) whether the plaintiff spoke on a matter of public concern; (2)
                whether the plaintiff spoke as a private citizen or public employee;
18              (3) whether the plaintiff's protected speech was a substantial or
                motivating factor in the adverse employment action; (4) whether the
19              state had an adequate justification for treating the employee
                differently from other members of the general public; and (5)
20              whether the state would have taken the adverse employment action
                even absent the protected speech.
21

22   *Id.* A plaintiff's failure to satisfy any single step ends the inquiry. *Johnson v. Poway Unified Sch.

23   Dist.*, 658 F.3d 954, 961–62 (9th Cir. 2011) (citing *Huppert v. City of Pittsburg*, 574 F.3d 696, 703

24   (9th Cir. 2009)).

25         Defendants focus on whether Peyton has adequately pled the third and fifth elements.

26   Mot. at 3–8. The Court addresses each Defendant in turn.

27

28   Case No.: 5:19-cv-05871-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
                                            7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### 1.    Lera

Defendants assert that Lera's failure to respond to Peyton's emails or phone calls is not an adverse employment action, and that Peyton has not pled any facts suggesting that his attendance at the Hirokawa fundraiser was a substantial or motivating factor in Lera's actions.  Mot. at 3–4.

As to Defendants' first argument regarding an adverse employment action, the Court finds that Peyton has adequately alleged an adverse employment action.  "In a First Amendment retaliation case, an adverse employment action is an act that is reasonably likely to deter employees from engaging in constitutionally protected speech."  *Coszalter v. City of Salem*, 320 F.3d 968, 970 (9th Cir. 2003).  "To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind.  Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden."  *Id.* at 975.  "The denial of even a 'trivial' benefit may form the basis for a First Amendment claim where the aim is to punish protected speech."  *Ulrich v. City and Cnty. of S.F.*, 308 F.3d 968, 977 (9th Cir. 2002) (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75–76 (1990)).  Here, Peyton alleged that after his attendance at the Hirokawa fundraiser became publicly known, Lera did not respond to Peyton's inquiries regarding attending the Academy Instructor Certificate Course, despite the fact that Peyton was already an Academy Instructor.  Compl. ¶¶ 12, 35, 47.  A jury could infer from Lera's failure to respond to Peyton that Lera took no action in order to prevent Peyton from attending the requested course.  When considered in combination with Defendants' other alleged acts, "it is clear that these acts amounted to a severe and sustained campaign of employer retaliation that was 'reasonably likely to deter' [Peyton] from engaging in speech protected under the First Amendment."  *Coszalter*, 320 F.3d at 977.

As to Defendants' second argument regarding whether Peyton's protected speech activity was a substantial or motivating factor in Lera's failure to respond, the Court finds that Peyton has adequately pled a causal connection.  "As with proof of motive in other contexts, this element of a First Amendment retaliation suit . . . involves questions of fact that normally should be left for trial."  *Ulrich*, 308 F.3d at 979.  Where—as here—an employer's knowledge of the protected

speech is not disputed, "circumstantial evidence showing motive may fall into three, nonexclusive categories: '(1) proximity in time between the protected speech and the alleged retaliation; (2) the employer's expressed opposition to the speech; and (3) other evidence that the reasons proffered by the employer for the adverse employment action were false and pretextual.'" *Id.* at 780 (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)); *see also Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751–52 (9th Cir. 2001). Here, Peyton emailed and called Lera in October and November 2017, the months immediately following the publication of Peyton's protected speech. The close temporal proximity between these events is sufficient to infer that Peyton's speech was the substantial or motivating factor for Lera's inaction. *See, e.g.*, *Coszalter*, 320 F.3d at 977 ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation."); *Allen*, 283 F.3d at 1078 ("[A]n eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory.").

While the allegations surrounding Lera's actions could be more fulsome, they are sufficient to give Defendants notice of Peyton's claims against her. Accordingly, the Court finds that Peyton has stated a claim for retaliation against Lera.

### 2. Cardoza

Defendants argue that Peyton fails to state a claim against Cardoza because Cardoza was not directly responsible for removing Peyton from the Crime Scene Investigation team; the removal from the Crime Scene Investigation team and denial of Peyton's requests for "comp time" and a "day trade" are not adverse employment actions; and Peyton has not pled any facts suggesting that his attendance at the Hirokawa fundraiser was a substantial or motivating factor in Cardoza's actions.

As to the first argument that Cardoza was not responsible for removing Peyton from the Crime Scene Investigation team, that argument directly contradicts the allegation that "Defendant Cardoza removed Plaintiff Peyton from the Crime Scene Investigation team," which the Court must take as true. Compl. ¶ 45. The fact that Cardoza stated that it was a "management decision"

United States District Court
Northern District of California

1    does not necessarily absolve Cardoza of any responsibility for making that decision.  Moreover,

2    this argument goes to the merits of Peyton's claim, not whether he has adequately pled that claim.

3        As to the second argument that removing Peyton from the Crime Scene Investigation team

4    and denying his requests for "comp time" and a "day trade" are not adverse employment actions,

5    the Court disagrees.  Peyton alleges that he had been informed that he would receive as much

6    "comp time" as he needed to complete his work and that "day trade requests" were commonplace,

7    suggesting that the denial of such requests was unusual.  Compl. ¶¶ 43, 48.  Additionally, the

8    denial of Peyton's requests for "comp time" impaired his ability to complete his assigned work,

9    potentially setting a pretextual stage for later discipline.  *Id.* ¶ 44.  When considered in

10   combination with Defendants' other alleged acts, "it is clear that these acts amounted to a severe

11   and sustained campaign of employer retaliation that was 'reasonably likely to deter' [Peyton] from

12   engaging in speech protected under the First Amendment."  *Coszalter*, 320 F.3d at 977.

13       As to the third argument that Peyton failed to plead facts sufficient to suggest that his

14   protected speech activity was a substantial or motivating factor in Cardoza's acts, the Court finds

15   that Peyton has adequately pled a causal connection.  These acts occurred in October and

16   November 2017, the months immediately following the publication of Peyton's protected speech.

17   The close temporal proximity between these events is sufficient to infer that Peyton's speech was

18   the substantial or motivating factor for Lera's inaction.  *See, e.g.*, *Coszalter*, 320 F.3d at 977;

19   *Allen*, 283 F.3d at 1078.

20       Accordingly, the Court finds that Peyton has stated a claim for retaliation against Cardoza.

21            **3.    Quinonez**

22       Defendants argue that Peyton fails to state a claim against Quinonez because Quinonez's

23   transfer of Peyton to West Valley Property Crimes did not sufficiently impact Peyton, the

24   complaint does not allege facts demonstrating that the transfer and Quinonez's criticism were

25   unwarranted, and Peyton has not pled any facts suggesting that his attendance at the Hirokawa

26   fundraiser was a substantial or motivating factor in Cardoza's actions.  Mot. at 5–6.  These

27   arguments are unavailing.

28   Case No.: 5:19-cv-05871-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS

United States District Court
Northern District of California

As to the first argument disputing whether Peyton was actually adversely impacted, Defendants cite no law to support their contention that the transfer must have affected Peyton by changing his compensation, work hours, or promotional opportunities.  *See* Mot. at 5.  Peyton alleges that his assignment to the Sexual Assault Investigations Unit was a coveted one and that property crimes was not.  Compl. ¶¶ 55-57.  The Ninth Circuit has found that "an unpleasant work assignment" in combination with other acts, including "repeated and ongoing verbal harassment and humiliation," can be adverse employment actions.  *Coszalter*, 320 F.3d at 976–77.

The second argument regarding whether Quinonez's acts were unwarranted is unpersuasive.  Peyton pleads an exemplary work history with a coveted assignment and potential support for promotion up until the day the fundraiser photo was published on Facebook.  Compl. ¶¶ 12-16, 19; *see also id.* ¶ 32.  Despite Quinonez's disparagement of his work ethic and work product on a weekly basis, neither Cardoza nor Sergeant Shaheen had a problem with his work ethic or work product.  *Id.* ¶ 54.  These facts are sufficient to create the inference that Quinonez's criticism and decision to transfer Peyton were unwarranted.

As to the third argument regarding a causal connection, Quinonez's acts occurred three to four months after Peyton's protected speech.  The close temporal proximity between these events is sufficient to infer that Peyton's speech was the substantial or motivating factor for Lera's inaction.  *See, e.g.*, *Coszalter*, 320 F.3d at 977; *Allen*, 283 F.3d at 1078.  To the extent Defendants argue that Peyton cannot state a claim for adverse employment action after February 2018, Mot. at 6, that argument is moot in view of the fact that the complaint does not allege any adverse employment actions by Quinonez after that date.  *See* Compl. ¶¶ 52-55.

Accordingly, the Court finds that Peyton has stated a claim for retaliation against Quinonez.

### 4.    Rodriguez

Defendants argue that Peyton fails to state a claim against Rodriguez because verbal and written counseling "simply [are] not an adverse employment action," there are other interpretations for Rodriguez's decisions to issue written and verbal counseling, Peyton does not

1    allege satisfactory work product and work ethic in November and December 2017, and Peyton has

2    not pled any facts suggesting that his attendance at the Hirokawa fundraiser was a substantial or

3    motivating factor in Cardoza's actions.  Mot. at 6–7.  The Court disagrees.

4        First, the verbal and written counseling alleged here are similar to "unwarranted

5    disciplinary action" which the Ninth Circuit has found to be adverse employment actions that, in

6    combination with other actions, "amounted to a severe and sustained campaign of employer

7    retaliation that was 'reasonably likely to deter' [Peyton] from engaging in speech protected under

8    the First Amendment." *Coszalter*, 320 F.3d at 977.

9        Second, the fact that there is an alternative interpretation for whether the written

10   counseling was justified is not a proper reason to dismiss a complaint, nor have Defendants cited

11   to any cases so holding.  Defendants' assertion that "two at-fault accidents cumulatively called for

12   written counseling" is not based on any language in the complaint, which says nothing about fault

13   for the accident.  *Compare* Mot. at 6 *with* Compl. ¶¶ 36-39.

14       For the reasons discussed above as to Quinonez's unwarranted criticism, Peyton's

15   allegations concerning Rodriguez's unwarranted criticism are likewise sufficient to state a claim.

16   *See supra* Section III.B.4.  Rodriguez's sudden criticism after Peyton's protected speech stands in

17   sharp contrast to his previous expressed pleasure and praise for Peyton's work and support for his

18   advancement.  Compl. ¶¶ 16-18.

19       Last, Rodriguez's acts began mere days after Peyton's protected speech and continued for

20   the next few months.  Compl. ¶ 40.  The close temporal proximity between these events is

21   sufficient to infer that Peyton's speech was the substantial or motivating factor for Lera's inaction.

22   *See, e.g.*, *Coszalter*, 320 F.3d at 977; *Allen*, 283 F.3d at 1078.

23       Accordingly, the Court finds that Peyton has stated a claim for retaliation against

24   Rodriguez.

25                        **5.    Smith**

26       Defendants argue that Peyton fails to state a claim against Smith because any allegations

27   about Smith's influence over the Disciplinary Review Board are "immaterial" based on Smith's

United States District Court
Northern District of California

1    ultimate power as Sheriff over discipline or termination.  Mot. at 7–8 (citing Santa Clara County

2    Ordinance Code § A20-2).  They contend that Smith was fully justified in terminating Peyton's

3    employment based on his surreptitious recording of Quinonez, which they say was a felony.  The

4    complaint does not allege any other retaliatory conduct on Smith's part.

5          Peyton argues that Defendants' reliance on Smith's "authority over disciplinary decisions

6    to essentially posit that no act taken under such authority . . . could violate 42 U.S.C. § 1983 . . . is,

7    of course[,] absurd . . . ."  Opp'n at 9.  Peyton is required to plead facts from which it may be

8    plausibly inferred that Smith would not have sought termination absent his protected speech.  *See*

9    *Eng*, 552 F.3d at 1070, 1072.  The Court finds that he has not done so here.  The complaint alleges

10   that Peyton was accused of surreptitiously recording his conversation with Quinonez, and absent

11   any facts suggesting that Peyton did not actually record the conversation or that the accusation was

12   otherwise untrue or pretextual, Smith possessed the authority under Ordinance Code § A20-2 to

13   terminate Peyton's employment based on his recording.  Peyton has not pled any other facts

14   otherwise.

15         Accordingly, the Court grants the motion to dismiss as to Smith.

16   **IV.   CONCLUSION**

17         For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART

18   Defendants' motion to dismiss, with leave to amend to add facts from which it may be inferred

19   that Smith would not have sought his termination but for his protected speech.  *See Eng*, 552 F.3d

20   at 1070, 1072.  Peyton shall file an amended complaint by **May 16, 2022**.

21         **IT IS SO ORDERED.**

22   Dated: April 25, 2022

23

24

25                                                   EDWARD J. DAVILA
                                                     United States District Judge
26

27

28   Case No.: 5:19-cv-05871-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS

United States District Court
Northern District of California